Please call the next case. 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, Elks Lodge 552 v. Workers' Compensation Comm'n I don't realize how short I am until I get up here. May it please the Court. My name is Tricia Shelton, and I am representing Elks Lodge today. The issues today are, it's our position that Judge Kavanagh's incorrectly applied the manifest weight standard of review, and when applied correctly, that there's sufficient evidence in the record to support the Commission's decision. We all agree that the issues are one of fact. It's the issue of causation and the issue of accident, and also the issue of credibility. We disagree on the test for the manifest weight and the deference that should be given to the Commission's decision on review. I believe that the case law is clear that when it is questions of fact, it is a manifest weight review. That the Commission is the finder of fact. They are to judge the credibility of the witnesses, resolve the conflicting testimony, draw inferences from the testimony and the evidence. And then the test is whether there's sufficient evidence in the record to support the Commission's decision. On this case, Judge Kavanagh's abandoned the current standard of review, the deference to the Commission's decision on issues of credibility, in favor of a standard of review that would allow the reviewing court to place substantial weight on the arbitrator's findings. So, in essence, are you saying that that was sort of the law in earlier cases, but the more recent cases have repeated it, that rationale, correct? Yes, the Cook case and the Orkin case that were cited. The older cases. Yes, and then I believe that virtually every case that has mentioned them since then has basically stated that that's a misstatement of the law. That the Commission is the finder of fact. And they have original jurisdiction, not appellate jurisdiction. But yes, Judge Kavanagh's relied on Cook and Orkin, which I believe have been repudiated repeatedly. So, I believe that that was the incorrect standard of review. I believe that that held the review to a higher standard and placed it under more of a strict scrutiny type of review. If you look at the case applying the standard of review that I believe is correct, and looking whether there's sufficient evidence in the record to support the Commission's decision, I believe that the Commission's decision should stand. A lot of this issue on accident involves the credibility of the witnesses. You had the testimony of the petitioner and you had the testimony of her supervisor, Mr. Schimonia. And the testimony was very different. The petitioner stated that she sustained a work accident. She reported that work accident to Mr. Schimonia and to another employee. He talked about it around several other members of the lodge. And that she had difficulty working the rest of her shift. That she had extreme difficulty working the next day. That it was then her day off on the Thursday and then Friday she woke up with a numbness in her face and she called in. Mr. Schimonia testified that he did have contact with her on all of those dates. That she did not present with any pain or have any apparent issues. Did not report a work injury. And it was based on that that the Commission found that Mr. Schimonia's testimony was more credible on that issue. Which they can do. Yes, exactly. Yes, and that is within their duties is to weigh the evidence and determine who they believe is more credible. We have the same issue with the causation regarding Dr. DeGrange and Dr. Gornett. They reviewed the evidence. They found that Dr. DeGrange's opinion, they found it more credible or on the issue of causation. He had all of the records to review. So he made a study of those records. He interviewed the petitioner. He conducted a physical examination. And he opined that her condition of ill-being was not causally related to the alleged work accident. That it was a continuation of a degenerative process. So I'm asking that the Commission's decision be upheld. Thank you, Counsel. So we have time to reply. Counsel may respond. My name is Eric Kirkpatrick. I represent the petitioner in this cause. Just to summarize it, I won this case with the petitioner's arbitration. Where the witnesses testified, where my client testified, I lost it at the Commission. It went to Judge Kavanos. And I will tell you, Justices, that in 27 years of doing this and having done several appeals, I have never in my life seen a circuit court judge write a 13-page opinion. So the question would become, in my mind, what it indicates to me is that there was something wrong with the Commission's decision. if a judge spends 13 pages writing a decision blasting the Commission. Well, even if you have a point on that, the question is going to become, inevitably, you're going to be called upon to answer, did the circuit court apply the wrong standard? Because if you did, then you have a problem. It doesn't matter how diligent it was written. I'm going to answer, I'm going to respond to that in two ways. One, I don't think I have a problem regardless of what the standard is, and I'll explain to you why in a moment. But more importantly, regarding the wrong standard, I understand what the law has said about those cases. But I still think that the judge was also citing those for the proposition that when a person testifies live in front of an arbitrator, you should not completely dispose of what that arbitrator had determined about that opinion. But is that what the order says? I'm reading this here. It says, accordingly, in cases where the Commission has rejected the arbitrator's factual findings without receiving any new evidence, we apply an extra degree of scrutiny to the record in determining whether there is a sufficient support for the Commission's decision. That's no longer the law. I understand that. And what I am respectfully saying to you, though, is even though that might not be the law, that is also not the stronghold standard. That's not the standard. The standard is still the manifest weight of the evidence. That just goes to one aspect of manifest weight of the evidence. I don't think he's disputing that manifest weight of the evidence is the standard. He's just talking about that extra special scrutiny. I'm saying, okay, even if the arbitrator's opinions aren't entitled to extra scrutiny, according to the more recent cases, it simply still cannot be ignored that witnesses testified and somebody who actually saw them. I'm going to also point out what the arbitrator said, or excuse me, what the circuit judge said, and what I believe to be the case, is that somebody somewhere decided this case was going to be denied. Didn't they cherry pick evidence from the file without consideration to other evidence and then try to use that evidence to support the denial of the claim? And I'm going to point to several aspects of that. So the standard, in answer to your question, the standard is still manifest weight of the evidence. The circuit court wasn't wrong about that. The only aspect that he was wrong about had to do with the extra scrutiny given to the fact that the arbitrator saw the folks testify. That I agree. That aspect is gone. Well, if you have a credibility issue. I'm going to explain. Right. I mean, it's a little deeper than that. Even if you're talking about manifest weight, it is the commission who decides that the witnesses are believable, period. I disagree. Well, who does decide if they're credible? I agree that deference is given to them on their determination of credibility, and the testimony of witnesses' deference is given. Yes. It does not say that they are the ones. I don't think there's a case out there that says they are what they say goes because this court. Well, who does then? Who decides credibility issues? You're not suggesting we do. Your Honor, what I'm suggesting is that's why we're here on review, and I know that this court on several occasions has overturned the commission's decisions. On credibility? On credibility. Can you cite us to the case that says that, please? I certainly will. I don't have it right in front of me, but I can tell you that I would find it unbelievable that this court would automatically decide that every time the commission says this witness is more credible, then, okay, well. No, you're right. I would have to concede. If the arbitrator of the commission said the moon is made of green cheese, you're right. We probably wouldn't uphold that, okay? But in the absence of something like that, I'm looking for a case that says the credibility, it's up to the commission to decide the weight and credibility. This court doesn't get to weigh credibility. And my response to that is this is as close as I can think of to the moon being made of green cheese. Okay. We'll take that into consideration. Let me explain why, okay? First of all, let's assess the testimony. This case was denied at the commission on the issue of accident. Why? Why was it denied on the issue of accident? One, there's no indication that this accident didn't happen. Two, it's undisputed that the lady worked alone until 2 o'clock. It's undisputed that she did the inventory. It's undisputed that the distributor showed up on Tuesdays at 2 o'clock. This lady described not only, hey, I went in and lifted a keg and hurt my neck. She described where the keg was located, what was behind. The handles that were on the keg. What it weighed and why she was having to do this job by herself. That is significant on the issues of credibility when you also combine that with the fact that every time she saw a doctor, to the ER, what did she report? She lifted the keg at work. Whose pneumonia? Whose pneumonia? I'm going to get to him. We've got doctors in the CT report, the emergency room, the principal care physician, the CT report, and Dr. Gornett. All have a good history of the accident. Now, pneumonia. If you look at the commission's decision, why did they decide pneumonia was more credible? Based on what I would consider misinterpretations of the law and what doesn't even make any sense to me. Before we get into that, this is important, and I'm not trying to be humorous or funny, but was Shimonia there the night of the accident? Shimonia was there the day of the accident, but she had already reported this accident to Debra Sauer. He testified he was at the bar in the evening of June 3rd, did he not? Yes, he did. He testified he was there. If you read the commission's decision closely, what you will find is that the commission didn't look at this on the issue of accident. Everything that they decided Shimonia was credible about had nothing to do with the accident. Your argument is it was reported earlier, so Shimonia is irrelevant, right? Shimonia is irrelevant because all he says is she didn't give me notice of the accident. The commission says, well, since she didn't give him notice of the accident, then the accident must not have happened. It doesn't make any sense. The commission said that the screenshots from the lady's phone that she looked at to refresh her recollection should have been admitted into evidence, and since they weren't admitted into evidence, it's not credible. Where does that come from? They had learned counsel at the table. That was put in without objection. She used it in the standard form of refreshing her recollection, and the commission comes along with some superfluous idea that, well, these weren't admitted, therefore her testimony is not credible, and it showed how many times she spoke with him, how long those conversations were. It's one thing to say that somebody is credible, and it's another thing to look at the entire evidence and decide what overall is more credible and what the manifest weight of the evidence is, and what the commission did was they just said Shimonia is more credible. That's it, and he didn't have any testimony that went to the issue of the accident. Just he says, you know, she didn't report it. He's not even the exalted ruler. She reported it to the exalted ruler. The commission says Shimonia has no bias. By the time he testified, he was the exalted ruler of this lodge, and the commission says he has no bias. It's not going to affect their insurance rates. It's not going to affect the fact they've got a claim. There's no bias. We can't ignore common sense here. You know, as I said a moment ago, I think the details that this lady gave, I've represented tons of people, and I think with her, there's not one screw-up in her testimony. She described everything. Everything is clear to the doctor. You don't have some of the issues that you had a moment ago with the case that was argued where there might not have been an issue, might not have been an indication to the doctors that they had prior stenosis. We don't have that here. Now, I'll turn that to the issue of causation, and what the commission paints is a picture that this lady was lucky to be alive due to neck and back pain. That's not the case at all. She had worked from October of 2013 through June 3rd of 2014 without missing any work because of any neck problems. She told Dr. Gornett about her neck problems that she'd had before. Nobody had suggested surgery. In fact, she testified she worked every day up until about a month, up to a month and a half, and they started giving her one day a week off. This isn't the lady that, as the commission would portray, was plagued with devastating neck pain. And so we look a little closer into the medical records. The prior injection she had, which was either October 9th or August, I believe October 9th, that was at the C23 level. Her problems that are from this accident are C56, C67. It's irrelevant. The briefs of counsel, post and counsel reference all kinds of things about she went to the doctor for this, she went to the doctor for that. But one of them in particular that's on page 13 of my brief, they look at October 28, 2010, and they say she was there for neck pain. The examination shows everything was fine. Same thing with the November 10, 2010 reference made in counsel's brief. Everything was fine. The fact of the matter is, many of those that's on page 13 of the brief, there was no indication that there was any problem with her neck. And then we jump to 2012, where I counted six visits between January 26 of 2012 and August of 2012, just those six visits. There's no indication of any neck pain. And she was there six times. The point being with all of this is it would be easy for the commission, as it was in this case apparently, to say, okay, this person's more credible, this person's more credible, and this person over here, the doctor that neither of which was supposed is more credible, and come to a decision based on those key phrases than to look at the whole record. Again, it's manifest weight overall. The other thing I want to point out about the credibility between the doctors, you know, I referenced in the brief that an MRI of June 19, 2014 was compared with the brief of July 26, 2013, showing the MRI report shows worsening, or excuse me. You know, I didn't write down in my notes here what doctor it was from. But there was noted to be worsening at the C6, C7 level than there was in 14 than there was in 2013. Dr. Gornett noted the same thing. Counsel represented to you a moment ago, and I'm sure she didn't intend to. She represented to you that Dr. DeGrange had all the records and that he had noted all the records. You know what's missing? Any indication or reference to the MRI of July 26, 2013. It's not there. There's no indication out of all the stuff that he reviewed, there's no indication that he reviewed the July 26 film. I would encourage you to double check me. But when we're talking about credibility of witnesses, and we have an IME doctor who saw her for 10 minutes, who didn't review a film that at least two physicians have said is worse than before. And we have a lady that worked for eight months with no problems. It seems to me the manifest weight of the evidence, regardless of Charlie Kavanagh's saying what he did about deference to the credibility, you know, special scrutiny given to the arbitrator's determination on somebody's testified life, sure does seem to me that in this case the commission didn't consider the manifest weight of the evidence. They poked around and decided for whatever reason that this was just one to deny. And it was wrong. To me it's that simple. It's probably one of the more frustrating decisions I've ever seen from the commission. And with that I'll close. Thank you very much. Thank you, counsel. Counsel, you may reply. I would like to address one of the last points first, which was the reading of the MRI by Dr. DeGrange. I would refer you to page C196 or 197 of the transcript. In Dr. DeGrange's report he lists the diagnostic studies he reviewed. He does not specifically list the July 26, 2013 MRI, but he does reference it and his reading of it in the report under the MRI of the cervical spine, which is June 19, 2014. He notes his comparison. He states there he does the reading of the 2014, then he states that there's a mild degree of central canal narrowing at both levels that appears to be unchanged comparing the images to those of the July 26, 2013 on the Cedarport imaging MRIs. So he does document his comparison. I would have preferred him to have listed that specifically, but he does reference that. It is apparent from Judge Kavanagh's decision that he didn't agree with the commission. That's obvious. But I know that you asked counsel to give a citation supporting that the reviewing court could hold the arbitrator's decision on credibility, or that it was their function to determine credibility. And there's Supreme Court cases, I know one is, I'm probably going to pronounce it wrong, CBER, that says the function of the commission is to judge the credibility of the witnesses and to draw reasonable inferences from their testimony. So it is the commission's function to do that. The test then is whether their decision is against the manifest weight of the evidence. I want to talk about these screenshots. If you look at the record, you will see that earlier in the testimony, petitioner was looking at her cell phone, looking at notes and items she had on her cell phone. I objected to that. I said, well, your honor, she can refresh her recollection, but she shouldn't just testify from the notes. And the arbitrator found he was going to allow her to testify from those notes. I did not object again. The arbitrator made it clear he was going to allow that. When Mr. Kirkpatrick approached her with these larger printouts of screenshots from her phone concerning the telephone calls, he specifically stated, I'm not introducing these into evidence. I'm not seeking to introduce these into evidence. She testified from those, just as she had her notes. But both the circuit court and the arbitrator relied on those screenshots themselves. Not the testimony of the petitioner, but on the screenshots themselves to bolster her credibility and to attack or impeach the credibility of Mr. Skamonia. And that's improper. Those were not into evidence. If you look through the record, you will see that those are not into evidence. They are not part of the evidence presented. I had no opportunity to object to foundation because they were not offered. And so that is the issue. I think that the court incorrectly relied upon that issue. And you're right. I know Mr. Kirkpatrick made a statement about the way that I would state it. You would think that it's a miracle she's alive with how I create her past history. But if you look at the records here, this woman has been appearing since 2010, complaining of severe, extreme, terrible pain in her neck, down her bilateral upper extremities, her lower extremities, her neck locking, numbness in her tongue, in her face. I mean, all of these complaints with basically benign findings on the MRI, with nothing to support those complaints. When she presented to Dr. Fleming in October of, I'm sorry, in August of 2013, she again was reporting severe pain. She wanted to be seen about the neck. Severe, long-standing pain, again with relatively no findings, with nothing that would support her extreme complaints. So this is something that has occurred for a long time. And if you look at every one of her complaints after the alleged accident date, you can find an identical one to prior. I mean, they were everything from the tongue being numb, to the jaw being numb, to all of her complaints. So I believe that the Commission's decision has sufficient weight, and there's sufficient evidence to support it. And I would ask that the Commission's decision be approved. Thank you, counsel, both for your arguments in this matter. We'll take them under advisement. And this position shall issue. The court will stand at brief recess.